Theresa **MEEKER** a/k/a Theresa Ann Gokool, Plaintiff,

v.

**R.E. ADDISON and Florida Highway Patrol, a Division of Highway Patrol of the Department of Highway Safety and Motor Vehicles, an Agency of the State of Florida, jointly and severally, Defendants.**

No. 83–618–Civ–SMA.

United States District Court, S.D. Florida.

Dec. 30, 1983.

Supplemental Opinion July 6, 1984.

THE COMPLAINT alleges that on November 14, 1982, Plaintiff THERESA MEEKER, a/k/a THERESA ANN GOKOOL ("MEEKER"), was lawfully driving her automobile in Dade County, Florida, when she was ordered to the side of the road by Defendant ADDISON, acting under color of state law by virtue of that Defendant's official position as an FHP Officer. Plaintiff MEEKER was subsequently arrested for driving under the influence of alcohol ("DUI"), and, allegedly without warrant or probable cause or process of any Court, was incarcerated in the Dade County Jail for approximately eight (8) hours. Plaintiff claims that she was not intoxicated at the time of her arrest. On this basis, Plaintiff MEEKER alleges that she is entitled to damages for: (1) false arrest rising to the level of Constitutional invasions; (2) assault and battery arising from allegedly rough and excessively forceful treatment during the course of Plaintiff's arrest; (3) false imprisonment in the rear of Defendant ADDISON's vehicle against Plaintiff's will; (4) malicious prosecution in that Plaintiff was charged with and prosecuted for DUI in County Court, which resulted in Plaintiff's acquittal; and (5) the violation of 42 U.S.C. § 1983 by both Defendants, in that the aforementioned acts of Officer ADDISON allegedly occurred because of Defendant FHP's failure to properly screen its employees or train them not to violate the constitutional rights of such persons as Plaintiff MEEKER. Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs of the action under each of the causes of action outlined above.

THIS CASE allegedly arises under 42 U.S.C. §§ 1983, 1988 and the common law of Florida, the Court's jurisdiction being based on 28 U.S.C. §§ 1331, 1332 and 1343, as well as upon the doctrine of pendent jurisdiction.

THE COURT having considered the Motion, the Reply and Amended Reply thereto, all memoranda submitted in support thereof, the relevant portions of the record,

Kathleen Phillips and Joel Lumer, Miami, Fla., for plaintiff.

Joseph Lewis, Jr., Richard D. Katz, Asst. Attys. Gen., Miami, Fla., for defendants.

### ORDER

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Motion to Dismiss Plaintiff's Complaint, filed by Defendants R.E. ADDISON ("ADDISON") and FLORIDA HIGHWAY PATROL ("FHP").

the law, and having been otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that the Motion be, and the same is hereby, GRANTED IN PART AND DENIED IN PART, for the reasons and on the terms articulated in this ORDER.

The claims brought against these Defendants under 42 U.S.C. §§ 1983 and 1988 are governed by different legal standards and principles from the pendent claims brought under Florida tort law. Hence, the Motion shall be addressed separately as to each of these distinct sets of claims.

THE FEDERAL CIVIL RIGHTS CLAIMS

■■■ With respect to Defendant ADDISON in his *individual* capacity, the Motion to Dismiss is DENIED. Although the Complaint in ¶ 6 concedes that "[a]t all times relevant hereto Defendant Addison was acting in the course and scope of his employment," it is alleged that Defendant ADDISON exceeded his authority by acting without probable cause.[1] When read as a whole, the Complaint suffices to state a cause of action under §§ 1983 and 1988 against Defendant ADDISON as an individual. Plaintiff has sufficiently alleged that (1) Defendant ADDISON has deprived Plaintiff of a constitutionally secured right, and (2) Defendant ADDISON acted under color of state law. These are the essential elements of a federal civil rights action under § 1983. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); cf. *Stringer v. Dilger*, 313 F.2d 536 (10th Cir.1963) (holding that a state highway patrolman arresting a person for DUI was acting under "color of" state law, even though he may have exceeded his official authority). An individual officer may be held liable for damages for conduct that has deprived a person of his constitutional rights. See, e.g., *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), reh'g

denied, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); cf. *Berdin v. Duggan*, 701 F.2d 909 (11th Cir.1983).

■■■ Regarding Defendant ADDISON as an OFFICER of the STATE of FLORIDA, the Motion to Dismiss is hereby GRANTED. Plaintiff has conceded, in ¶ 6 of the Complaint, that Defendant ADDISON was acting within the course and scope of his employment by the State. It has been held that where an Officer has so acted, the state or government entity cannot be vicariously liable for his torts or actions in excess of his authority. See, e.g., *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This is not to say that suit cannot be maintained against Defendant ADDISON individually, and the Court has expressly held otherwise hereinabove. The State, however, cannot be held liable under a *respondeat superior* or vicarious liability theory for the tortious misconduct of its officers or employees. *Owen*, supra; *Monell*, supra.

As against Defendant FHP, the Motion to Dismiss is DENIED *except* that as to *punitive* damages only, the Motion is GRANTED. A cognizable federal cause of action has been stated under 42 U.S.C. §§ 1983 and 1988.

In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court of the United States held that by enacting 42 U.S.C. § 1983, Congress did not override the sovereign immunity conferred upon the states by the Eleventh Amendment. In its current state of evolution, this type of immunity has been described by the Supreme Court as "the rule

---

**1.** If it were to appear that Defendant ADDISON acted in good faith and with probable cause, that Defendant would be entitled to qualified immunity. See *Harlow v. Fitzgerald*, 457 U.S.

800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and cases cited therein. As of this time the record is not complete enough for the Court to consider the issue or to rule thereon.

... that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Quern v. Jordan,* 440 U.S. at 337, 99 S.Ct. at 1143, citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 66 (1974).

■ This Court has previously held, in *Brooks v. Parker,* No. 80–2258–Civ–SMA (S.D.Fla. Jan. 21, 1981) (adopting the Report and Recommendation of Magistrate Peter R. Palermo), that the language of Fla.Stat. § 111.071(1)(a), which had not as yet been codified, "clearly indicates that the [Florida] Legislature intended to waive the State's sovereign immunity" in actions brought under § 1983. For the reasons articulated in this Court's opinion in *Brooks v. Parker,* this Court reiterates its holding that the State of Florida has waived its sovereign immunity for actions of this type.

■ Waiver of sovereign immunity is not to be lightly inferred. See *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132, reh'g denied, 451 U.S. 933, 101 S.Ct. 2008, 68 L.Ed.2d 319 (1981); *Quern v. Jordan, supra; Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In fact, waiver should only be found where the relevant statutes contain either " 'the most express language or ... such overwhelming implications ... as [will] leave no room for any other reasonable construction.' " *Florida Department of Health and Rehabilitative Services,* 450 U.S. at 150, 101 S.Ct. at 1034, citing *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909). As this Court found in *Brooks v. Parker,* and as further expounded upon herein, the relevant Florida statutes fall within even the most stringent tests of construction and admit of no reasonable interpretation other than waiver of Eleventh Amendment sovereign immunity.

Florida Statute § 111.07, "Defense of Civil Actions Against Public Officers," states, in pertinent part, as follows:

> Any agency of the state ... is authorized to provide an attorney to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission ... arising out of and in the scope of his employment or function...
>
> Defense of such civil action shall include, but not be limited to, any civil rights lawsuit seeking relief personally against the officer ... for an act or omission under color of state law, *wherein it is alleged that such officer, employee, or agent has deprived another person of his rights under the Federal Constitution or laws.*

(Emphasis supplied).

Florida Statute § 111.07, prior to the revisions of 1979, see Laws 1979, c. '79–139, § 1, had been titled "Defense of tort actions against public officers or employees," and had been worded so as to reflect its focus on tort claims.[2] The changes in the statute broaden its reach to include Federal Constitutional actions. This is especially significant when construed in conjunction with Florida Statute § 111.071(1)(a), which provides that a state agency, where not insurable under the Insurance Risk Management Trust Fund, is authorized to spend its monies in order to satisfy "[a]ny final judgment, *including damages,* costs, and attorney's fees, arising from a complaint for damages or injury suffered as a result of any act or omission of any officer, employee or agent *in a civil or civil rights lawsuit described in § 111.07...*" (Emphasis supplied). Section 111.071(1)(a) goes

---

**2.** The former statute authorized government agencies and subdivisions "to defend any action in tort brought against any of its officers or employees as a result of any alleged negligence arising out of and in the scope of their employment ... unless such officer or employee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property." Florida Statute § 111.07 was subsequently amended, as discussed above, to explicitly include federal constitutional torts.

on to differentiate between the liability limit for tort actions, which is governed by Florida Statute § 768.28, and civil rights suits brought under 42 U.S.C. § 1983 or similar federal statutes, for which "payments for the full amount may be made unless the officer, employee, or agent has been determined in the final judgment to have caused the harm intentionally." ·

These sections explicitly refer to the type of action at issue in the case at bar; they provide for legal representation of agents and employees of the state and for payment of damages out of government funds if such becomes necessary. Sections 111.-07 and 111.071(1)(a) of the Florida Statutes thus express a waiver by the state of its sovereign immunity in cases brought pursuant to federal civil rights statutes such as 42 U.S.C. § 1983.[3] Notably, the state has authorized the payment of *damages*, which constitute the type of retrospective relief that has traditionally been afforded the highest degree of Eleventh Amendment protection, absent waiver. See generally *Edelman v. Jordan*, 415 U.S. at 664–65, 94 S.Ct. at 1356–57 (noting the exception to the Eleventh Amendment's protection for *prospective* relief such as an injunction, first announced by the Court in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), as distinguished from retrospective relief such as damages).

That Florida has waived its Eleventh Amendment immunity is made even more apparent by the language of Florida Statute § 768.28(1), which states:

In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies and subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

As explained fully and persuasively in *Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1222 (D.R.I.1980), "[t]he parallels between § 1983 and the common law of torts have long been recognized by courts and commentators. The Supreme Court has often referred to conduct actionable under § 1983 as 'constitutional torts.' " (Citations omitted). Where a state has waived immunity ˙from tort liability, it is but a small step for the state to accept liability when the invasive conduct is labeled a "constitutional" rather than a "common law" tort.

Additionally, the Court notes that Florida Statute § 284.38, which is entitled "Waiver of sovereign immunity; effect," provides, in relevant part, as follows:

The [Insurance Risk Management Trust Fund] programs developed herein shall provide limits as established by the provisions of s. 768.28 if a tort claim. The *limits* provided in s. 768.28 shall not apply to a civil rights action arising under 42 U.S.C. s. 1983 or similar federal statute. (Emphasis supplied).

Section 284.31, which details the coverage provided to the state's various departments and agencies under the Insurance Risk Management Trust Fund, established under Florida Statutes, Chapter 284, Part 2, similarly provides for a separate insurance account for "federal civil rights actions under 42 U.S.C. s. 1983, or similar federal statutes." These sections, 284.31

---

**3.** Section 111.071(4) states: "This section is not intended to be a waiver of sovereign immunity or a waiver of any other defense or immunity to such lawsuits." However, when all of the relevant statutes are read *in pari materia,* it is clear that § 111.071(4) is a savings clause reserving any or all defenses still available to the State after waiver or consent or other concession has been given.

and 284.38, Florida Statutes, specifically abrogate the usual monetary limitations on the amount of recovery in cases in which a final judgment is entered against a constitutional tortfeasor in an action brought under an appropriate federal statute. Notably, at least one Florida court has held that the authority of a state agency to purchase insurance *in and of itself* constitutes a ground for inferring waiver of sovereign immunity. See *Surette v. Galiardo*, 323 So.2d 53 (Fla. 4th DCA 1975).

This Court is cognizant of the opinion of the District Court for the Northern District of Florida, Tallahassee Division, in *Shinholster v. Graham*, 527 F.Supp. 1318 (1981), wherein that Court held that Florida had not waived its sovereign immunity for federal civil rights cases. See also *Saulsberry v. Florida State University*, No. TCA 80–855 (N.D.Fla. Jan. 9, 1981) (per Stafford, C.J.); *Commercial Consultants Corporation v. Walters*, No. TCA 79–827 (N.D.Fla. Jan. 30, 1981) (per Stafford, C.J.). But see *LeClair v. Langee*, No. GCA 81–0008 (N.D.Fla.1982) (per Higby, J.) (finding that Florida has waived sovereign immunity for federal civil rights suits). The *Shinholster* opinion interprets Florida Statute § 284.38 as excluding constitutional torts from Florida's waiver of tort immunity "since the recovery limits, a specific restriction without which the State of Florida certainly would not waive its sovereign immunity, specifically does not apply to civil rights actions." 527 F.Supp. at 1334. Yet nothing in § 284.38 states anything that can be so construed; as noted above, the section differentiates between constitutional torts and state law torts *only* for the purpose of waiving *the recovery limits* for the former:

> The *limits* provided in s. 768.28 shall *not* apply to a civil rights action arising under 42 U.S.C. s. 1983 or similar federal statute. Payment of a pending or future claim or judgment arising under any of said statutes may be made upon this act becoming a law, unless the officer, employee or agent has been determined in

the final judgment to have caused the harm intentionally.

Fla.Stat. § 284.38. (Emphasis supplied).

A close reading of the legislative history cited in *Shinholster* suggests the construction herein set forth. The cited statutes and legislative history speak for themselves literally when read *in pari materia.* For example, see *Analysis of Committee Substitute for House Bill 1278, Florida House of Representatives Committee on Judiciary,* § 8 (1979) ("S. 284.38, F.S., is amended to provide that for a tort claim, the insurance programs developed in Chapter 284.[sic] part II, shall be subject to the monetary limits in s. 768.28, F.S. [I]f the claim arises from a civil rights action under 42 U.S.C., s. 1983, or similar federal statute, the limits in s. 768.26, F.S. shall not apply."); *Florida Senate Staff Analysis and Economic Impact Statement on Committee Substitute, Senate Bill 332,* ¶ I.B (May 14, 1979) ("S. 111.07, F.S., is broadened to allow the state or its subdivision to defend an employee in any civil action arising out of the scope of employment. Defense of such civil actions shall include but not be limited to civil rights lawsuits... S. 111.071, F.S., is created to authorize a political subdivision of the State or a State agency ... to pay final personal judgments against employees in civil or civil rights lawsuits. If the civil action arises under s. 768.26 [768.28] the monetary limitation of that section apply [sic]. *If it is a civil rights action under 42 U.S.C., s. 1983, payment may be in full.*") (Emphasis supplied).

The foregoing passages and others cited by the District Court in *Shinholster* affirmatively demonstrate that the distinctions the legislature has drawn between "constitutional" and "common law" torts were drawn for purposes of recovery limitations only. That the legislature has seen fit to waive the limits of liability for constitutionally-based claims indicates the legislature's concern that Plaintiffs in constitutional tort cases be enabled to recover fully for injuries suffered thereby. That the legislature has repeatedly treated both

"constitutional" and "common law" torts within the same sections of the statutes and their legislative histories further supports the notion promulgated by *Marrapese* that the two types of actions are historically and logically interrelated, the § 1983 claims emanating and evolving out of common law foundations. This Court finds the District of Rhode Island's *Marrapese* decision compelling and its rationale applicable here.

Since the State of Florida has waived its sovereign immunity for purposes of federal civil rights actions brought under 42 U.S.C. § 1983 and similar statutes, the state and its agencies can be sued pursuant thereto. Consequently, the Motion to Dismiss with respect to FHP is DENIED as to the federal constitutional claims. Further, the Supreme Court of the United States has recently held that exhaustion of state administrative remedies is not a prerequisite to bringing a federal civil rights action in federal court. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Plaintiff MEEKER's failure to exhaust state administrative remedies would thus not preclude Plaintiff's lawsuit on the §§ 1983 and 1988 claims.

■ The Complaint, however, does not set forth a claim directly against FHP or the State which would suffice to confer punitive damages upon Plaintiff. Additionally, the Supreme Court has held that neither the legislative history of § 1983 nor public policy support the granting of punitive damages against a municipality for the bad faith acts of its officials. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). For the reasons enunciated therein, the claims for punitive damages against FHP shall be STRICKEN from the Complaint and, with respect to punitive damages ONLY, the Motion to Dismiss is GRANTED as to FHP.

## THE STATE TORT LAW CLAIMS

■ In addition to her federal civil rights claims, Plaintiff MEEKER has asserted various causes of action under Florida law for false arrest, assault and battery, false imprisonment and malicious prosecution. With respect to all of these claims, which are set forth in Counts I–IV of the Complaint, the Motion to Dismiss is hereby GRANTED as to both Defendant ADDISON and Defendant FHP, on the ground that under the applicable Florida Statute, § 768.28(6), a claimant is required to present the claim in writing to the appropriate agency:

> An action shall not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also ... presents such claim in writing to the Department of Insurance, within three years after such claim accrues and the Department of Insurance or the appropriate state agency denies the claim in writing. The failure of the Department of Insurance or the appropriate agency to make final disposition of a claim within six months after it is filed shall be deemed a final denial of the claim for purposes of this section.

Florida Statutes, § 768.28(6).

Plaintiff MEEKER has not shown any attempt to comply with the administrative requirements of Florida Statute § 768.-28(6), which was designed by the Florida legislature to provide claimants such as Plaintiff with administrative recourse for their problems, thereby minimizing the need for judicial energy and resources to be devoted thereon. As a result of Plaintiff's failure to comply therewith, this Court will not assert jurisdiction over such unexhausted state tort claims.[4] In this respect, the Motion is GRANTED and the

---

4. Additionally, the Court declines to exercise its discretion to accept pendent jurisdiction because of the substantial likelihood that the jury would be confused by having to consider state claims which allow for punitive damages against FHP and federal civil rights claims which do *not.* Plaintiff might wish to consider bringing these claims in state court if otherwise appropriate.

state law tort claims are hereby STRICKEN from the Complaint, without prejudice to Plaintiff to renew those claims upon a proper showing to this Court verifying that state administrative procedures have been followed and exhausted.

ON THE BASIS of the aforegoing, it is thereupon

ORDERED AND ADJUDGED:

1. That the Motion to Dismiss the federal civil rights claims is hereby DENIED with respect to Defendant ADDISON in his individual capacity;

2. That the Motion to Dismiss the federal civil rights claims is hereby GRANTED with respect to Defendant Addison in his capacity as an officer and employee of the State of Florida;

3. That the Motion to Dismiss the federal civil rights claims is hereby DENIED as to Defendant FHP, *except* that with respect to *punitive* damages *only*, the Motion to Dismiss is GRANTED and the claims for punitive damages *stricken;*

4. That the Motion to Dismiss the state tort claims is hereby GRANTED in ALL RESPECTS without prejudice to renewal upon Plaintiff's proper showing of exhaustion of state administrative remedies.

### SUPPLEMENTAL OPINION

THIS CAUSE came before the Court upon the following Motions filed by the parties in the above-styled action:

1. The Motion to Alter or Amend Order and Notice of Supplemental Authority filed by Defendants R.E. ADDISON ("ADDISON") and FLORIDA HIGHWAY PATROL ("FHP")

2. Plaintiff THERESA MEEKER's ("MEEKER's") Motion to Alter or Amend Order of the Court; and

3. Defendant FHP's Motion to Amend Interlocutory Order.

THE COURT having reviewed these Motions and the memoranda submitted therewith, all responses and/or supplemental authorities filed, the relevant portions of the record, the law, and having been otherwise advised in the premises, it is thereupon

ORDERED AND ADJUDGED as follows:

Defendant ADDISON's and Defendant FHP's Motion to Alter or Amend Order is hereby DENIED insofar as this Court reaffirms and readopts its ORDER dated December 30, 1983, as hereby MODIFIED and SUPPLEMENTED.

In *Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983), the Court of Appeals was faced with a unique and atypical factual and procedural situation. The estate of a woman killed by her husband had sued State Attorney Gordon G. Oldham, Jr. and the State of Florida for having earlier failed to successfully prosecute the husband for previous batteries upon the woman. The estate argued that this alleged failure was the cause of the woman's death. The state court awarded summary judgment in favor of the defendants, who subsequently brought a malicious prosecution action against counsel for the estate, the law firm of Maher, Overchuck, Langra and Cate, P.A. ("Cate"). Cate filed a motion to dismiss the malicious prosecution action, claiming that it had brought the earlier action in the good faith belief that it asserted a supportable claim. Cate's motion to dismiss was denied, prompting the law firm to sue in Federal Court under 42 U.S.C. § 1983 ("§ 1983"), seeking thereby to enjoin the state and the state attorney from further litigating the malicious prosecution case. That federal suit was dismissed as against the State of Florida. The Eleventh Circuit affirmed the dismissal on grounds of Eleventh Amendment immunity from suit. *See* 707 F.2d 1179–80. This aspect of the *Cate* opinion is at the heart of the issues now facing the Court in the case *sub judice.*

The Eleventh Circuit in *Cate* found that "[a]lthough Eleventh Amendment immunity may be waived in some circumstances, there is no basis for finding waiver *in this case.*" *Id.* at 1182. (Emphasis added). The Court of Appeals went on to explicate:

[T]he state by its own action may waive Eleventh Amendment immunity. Such

waiver may be express or implied. *The State of Florida expressly has waived, to a limited extent, its state sovereign immunity for certain actions in tort.* Fla.Stat. § 768.25 [sic]. Such waiver does not automatically apply to Eleventh Amendment immunity in federal courts. When the statutory waiver "does not contain any clear indication that the state intended to consent to suit in federal courts," *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), it will not automatically be read to waive immunity to suit in federal court ... Even if Fla.Stat. § 768.25 [sic] could be read as a waiver of Eleventh Amendment immunity, "[t]he Eleventh Amendment operates to bar suit *except insofar as the statute waives state immunity from suit, Ford Motor Co. v. Dept. of Treasury*, 323 U.S. at 462, 65 S.Ct. at 350 (emphasis added), and here the waiver applies only to negligence actions in tort, *not the type of claim underlying this § 1983 action.*" 707 F.2d at 1182 n. 2. (Emphasis added).

The Eleventh Circuit in *Cate* was confronted with having to construe Fla.Stat. § 768.28 as imparting a waiver in the type of action for preliminary injunction which could not have resembled a "negligence action in tort" in a manner sufficient to place it within the ambit of that statute. Plaintiff in *Cate* was a law firm attempting to *prevent* the state from prosecuting a civil action against the firm, the alleged tortfeasor. The case at bar materially differs from *Cate* in that here, "the type of claim underlying this § 1983 action" is a claim for monetary relief based substantially on allegedly tortious violations committed by the state. The parallels between the underlying tort claims and the § 1983 action *sub judice* are significant, and absent the alleged set of facts constituting numerous state torts, there presumably would be

no § 1983 action. *Cf. Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1222 (D.R.I.1980) ("The Supreme Court has often referred to conduct actionable under § 1983 as 'constitutional torts.' [Citations omitted]. Where a state has waived immunity from tort liability, it is but a small step for the state to accept liability when the invasive conduct is labeled a 'constitutional' rather than a 'common law' tort.").

Since *Cate v. Oldham, supra,* was a suit for preliminary injunction, the insurance sections and liability limitation sections of the Florida statutes did not come into play. In the case at bar, however, Fla.Stat. §§ 284.31, 111.07 and 111.071 are of central importance because they provide for recovery of money damages in a suit against the state or its agencies or subdivisions. As noted in this Court's ORDER of December 30, 1983, Fla.Stat. § 111.071(1)(a) provides that an uninsured state agency may spend its own funds to satisfy "any final judgment, including damages ... arising from a complaint for damages or injury suffered as a result of any act or omission of any officer, employee or agent in a civil or civil rights lawsuit ..." See Order, Dec. 30, 1983 at 6–7. Such a "civil rights lawsuit" is defined in Fla.Stat. § 111.07 to include cases brought "under the Federal Constitution or laws." Fla.Stat. § 284.31 similarly provides for a separate insurance account for "federal civil rights actions under 42 U.S.C. § 1983, or similar federal statutes." Additionally, Fla.Stat. § 768.28(11) provides that lawsuits brought pursuant to § 768.28 shall be brought "in the court of appropriate jurisdiction," which certainly would include the Federal Court in an action brought under § 1983.

■ Defendants ADDISON and FHP further argue that a state cannot be a "person" amenable to suit under § 1983.*

---

* There is little question that the State of Florida, under the relevant statutes, is a proper defendant with respect to a Plaintiff's claim for attorney's fees in a federal civil rights suit. In fact, to recover attorney's fees from the State in such an action, the Eleventh Circuit has recently held that a Plaintiff must join the State as a party

defendant. *See generally Glover v. Alabama Dept. of Corrections*, 734 F.2d 691 (11th Cir. 1984); *see also Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Thus, even if this Court were to have decided otherwise with respect to the issue of waiver of Eleventh Amendment immunity, or if the Eleventh Cir-

The District Court in *Cate* so held, *see* 707 F.2d at 1181, but the Court of Appeals explicitly declined to rule on this question. *Id.* at 1181 & n. 3 (noting that there is no binding precedent on this issue in this Circuit). The language of Fla.Stat. § 768.28 strongly suggests that the State *can* be a person subject to suit by the terms of the waiver therein announced, which includes suits brought under § 1983, and this Court now so holds. *See* Fla.Stat. § 768.28(5) ("The state ... shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances."). It would make no sense *ever* to find waiver by a state in a § 1983 case if the state could never be considered a "person" for § 1983 purposes. *See Quern v. Jordan,* 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979) (Brennan, J., concurring in the judgment) ("[T]he expressed intent of Congress, manifested virtually simultaneously with the enactment of the Civil Rights Act of 1871, was that the States themselves, as bodies corporate and politic, should be embraced by the term 'person' in § 1 of that Act." 440 U.S. at 357, 99 S.Ct. at 1154.); *cf. Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Congress intended to include municipalities in the definition of "persons" subject to liability under § 1983).

In the case at bar, the § 1983 claims and the underlying tort actions stem so fundamentally and inextricably from the same set of alleged factual circumstances that the Florida statutes, read *in pari materia,* constitute a waiver of Eleventh Amendment immunity under these circumstances. The same cannot be said of the allegations in *Cate v. Oldham, supra. Cate* thus does not represent a position contrary to or irreconcilable with that taken by this Court in its Order of December 30, 1983.

Defendants ADDISON and FHP contend further that on the basis of *Pennhurst State School & Hospital v. Halderman,* — U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), Florida has not waived its immunity because of the reserve clause found in Fla. Stat. § 111.071(4), which states:

> This section is not intended to be a waiver of sovereign immunity or a waiver of any other defense or immunity to such lawsuits.

As noted by this Court in its ORDER of December 30, 1983, at 7 n. 3, Fla.Stat. § 111.071(4), when read *in pari materia* with all of the relevant statutes, is a savings clause reserving any or all defenses still available to the State after waiver or consent or other concession has been given. This savings clause is not of the type addressed by the Supreme Court in *Pennhurst, id.;* in the *Pennhurst* clause, the Commonwealth of Pennsylvania explicitly stated:

> Federal Courts.—Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States. 42 Pa. Const.Stat. § 8521(b) (1980).

See *Pennhurst,* — U.S. at ——, 104 S.Ct. at 909 n. 12.

It is readily apparent that the Pennsylvania statute is far more explicit, in terms of its references to both the Eleventh Amendment and to suits in Federal courts, than the Florida savings clause found in Fla. Stat. § 111.071(4). Notably, the Pennsylvania statute speaks *only* to the Eleventh Amendment immunity issue, whereas the Florida clause refers broadly to "sovereign immunity or ... any other defense or immunity" which might remain after the State has waived or otherwise conceded or disavowed such defenses.

■ Defendants ADDISON and FHP finally contend, in their Motion to Alter or Amend Order, that if there is a waiver of Eleventh Amendment immunity under the Florida statutes, such waiver operates only where Plaintiff has first met the prerequi-

---

cuit were to reverse upon interlocutory appeal under § 1292 certification, *see* ¶ 2, *infra,* the State of Florida, would still be a proper defend-

ant in this action insofar as Plaintiff MEEKER seeks to recover attorney's fees under 42 U.S.C. § 1988.

sites set forth in the statute with respect to bringing actions against the state. Since Plaintiff MEEKER failed to first present her claims "in writing to the appropriate agency, and also ... to the Department of Insurance," Fla.Stat. § 768.28(6), Plaintiff MEEKER is argued to be precluded from bringing the § 1983 action. While a waiver of immunity can be limited to specified circumstances, *see Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), exhaustion of state administrative or judicial remedies has never been required where the § 1983 claim attacks the regular policies, procedures or employment methods generally ascribed to by the state. *Compare Patsy v. Bd. of Regents of State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) *and McNeese v. Bd. of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), *with Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *see also Wilson v. Bd. of Regents*, 694 F.2d 239 (11th Cir.1982).

In the case at bar, the tort remedies provided by Fla.Stat. § 768.28 were available to Plaintiff MEEKER, but she failed to pursue them. The Court accordingly dismissed those causes of action. *See* ORDER, December 30, 1983. However, with respect to her § 1983 claim, the policies supporting the right to bring a § 1983 action in Federal Court where the state remedies are inadequate, or where the Federal claim is brought with respect to State procedures and practices alleged to be unconstitutional, support this Court's conclusion herein that Plaintiff MEEKER is entitled to maintain her § 1983 claim despite her failure to satisfy the prerequisites of Fla. Stat. § 768.28. *See generally Patsy v. Bd. of Regents, supra; McNeese v. Bd. of Education, supra.*

2. This Court is cognizant of the contrary view of the Florida statutes set forth in *Shinholster v. Graham*, 527 F.Supp. 1318 (N.D.Fla.1981). The Court of Appeals for the Eleventh Circuit has noted the differing views of this Court and that of *Shinholster. See Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730 at 733 (11th Cir.1984). If the decision of this Court were ultimately determined to be incorrect, the time and effort required by this Court to take the State to trial, and the expenditures that would be required by the State to defend this suit, would constitute a substantial misappropriation of resources. Additionally, important issues of State sovereignty are involved in this matter. This Court is of the opinion that the present ORDER and the ORDER of December 30, 1983 in this matter involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from these ORDERS may materially advance the ultimate termination of this litigation. Therefore, this ORDER and the ORDER of December 30, 1983 are hereby certified for immediate appeal to the Court of Appeals for the Eleventh Circuit, pursuant to Section 1292, Title 28, United States Code.

FURTHER PROCEEDINGS in this case are hereby STAYED until the Court of Appeals either refuses to accept interlocutory appellate jurisdiction or issues an opinion on the merits of the certified issues.

3. Plaintiff MEEKER's Motion to Alter or Amend Order of the Court is hereby GRANTED. All pendent state claims, including those for punitive damages, are hereby REINSTATED against Defendant ADDISON in his individual capacity. Exhaustion under Fla.Stat. § 768.28 is not required where the Defendant is an individual officer, as opposed to the state or a state agency. Moreover, since punitive damages would be allowable against Defendant ADDISON under § 1983, the punitive damage claims asserted under state law would not be likely to overly confuse a jury. Defendant ADDISON may file an AMENDED ANSWER to the Complaint, based upon the reinstated claims, NOT LATER THAN TWENTY (20) DAYS from the date upon which this Court's STAY of this litigation pending interlocutory appeal, *see* ¶ 2 above, is lifted.

4. All outstanding Motions for enlargement of time to respond to complaint or other pleadings are hereby GRANTED, *nunc pro tunc.*

5. Defendant ADDISON's Motion to Strike Plaintiff's Motion to Alter or Amend Order of the Court is hereby DENIED.