483 So.2d 809 (1986)
Maurice SKOBLOW, Appellant,
v.
AMERI-MANAGE, INC., Robert A. Burton, John Pitrelli, Elsa Dominguez, Barbara McMurtrey, Jackie Dale and Paul Uhrig, Appellees.
No. 85-1741.
District Court of Appeal of Florida, Third District.
February 18, 1986.
*810 Lipman & Weisberg and Robert Weisberg, Miami, for appellant.
Jim Smith, Atty. Gen., and Craig Willis, Asst. Atty. Gen., for appellees.
Before HENDRY, HUBBART and NESBITT, JJ.
PER CURIAM.
The plaintiff appeals an order entering partial summary judgment for the defendants. We affirm.
The plaintiff was employed as a dentist at South Florida State Hospital. The hospital is a mental institution which is owned, funded and regulated by the State of Florida. Pursuant to a contract with the state, Ameri-Manage, Inc., provides management services at the hospital. On February 13, 1981, the plaintiff was notified of his termination from employment at the hospital by a letter from Robert Burton, the chief executive officer of the hospital and an employee of Ameri-Manage. This letter indicated that the plaintiff was being discharged because of "inadequate performance in carrying out your duties and responsibilities."
Two weeks later, an article appeared in the Miami Herald concerning the plaintiff's discharge. Four officials of the hospital or state were reported in the article to have given negative statements about the plaintiff's work as a dentist at the hospital. These officials were Jackie Dale, the community and patient relations director at the hospital (referred to in the article as the hospital spokeswoman), Barbara McMurtrey, the human resources director (personnel officer) at the hospital, Dr. Paul Uhrig, the director of the state's Division of Institutional Dental Services, and Dr. Elsa Dominguez, the dental services coordinator at the hospital and the plaintiff's immediate supervisor.
The plaintiff filed a two-count complaint against the defendants. In the first count, the plaintiff brought an action for defamation against Dale, McMurtrey, Uhrig and Dominguez. Burton was also named in this count on the asserted basis of a civil conspiracy with the other named defendants to commit the defamation. In the second count, the plaintiff alleged a civil rights violation pursuant to 42 U.S.C. § 1983 regarding his termination at the hospital. Ameri-Manage and Burton were named as defendants in this count. The defendants filed a motion for partial summary judgment on the basis of absolute privilege and sovereign immunity. Partial summary judgment was entered in favor of the defendants and this appeal followed.
In McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), the supreme court first recognized an executive official's absolute immunity from defamation actions based on statements made in connection with the performance of his duties and responsibilities. The court recognized that executive officials had the same absolute immunity afforded members of the judicial and legislative branches of government. 184 So.2d at 433. Subsequently, the supreme court explained the need for this immunity protection in a case with facts similar to those in the present case:
The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged. Under our democratic system the stewardship of public officials is daily observed by the public. It is necessary that free and open explanations of their actions be made. Any public servant should expect that those having authority to discharge him will explain their reasons for such dismissal.
Hauser v. Urchisin, 231 So.2d 6, 8 (Fla. 1970). The scope of the absolute immunity has been extended to private communications and the emphasis has shifted to the "nature of the officer's duties rather than the level of his rank." City of Miami v. Wardlow, 403 So.2d 414, 416 (Fla. 1981). See Cripe v. Board of Regents, 358 So.2d 244 (Fla. 1st DCA), cert. denied, 365 So.2d 710 (Fla. 1978); Johnsen v. Carhart, 353 So.2d 874 (Fla. 3d DCA 1977). Thus, the controlling issue in deciding whether a public employee is absolutely immune from *811 actions for defamation is whether the communication was within the scope of the employee's duties. Wardlow, 403 So.2d at 416.
In the present case, all the defendants alleged to have defamed the plaintiff either had official supervisory responsibility over the plaintiff or had responsibilities regarding personnel matters or community relations. Since the statements made concerning the plaintiff's discharge were related to and made within the scope of the defendants' official duties, we hold that these defendants are entitled to an absolute privilege and are, therefore, immune from liability for the alleged defamation. See Wardlow; Hauser; Mueller v. The Florida Bar, 390 So.2d 449 (Fla. 4th DCA 1980); Cripe; Johnsen. Accordingly, summary judgment was properly entered in favor of Dale, McMurtrey, Uhrig and Dominguez on the defamation count. Likewise, summary judgment was properly entered in favor of Burton on this count. See Perdomo v. Jackson Memorial Hospital, 443 So.2d 298 (Fla. 3d DCA 1983) (where count regarding the goal of a conspiracy (defamation) fails, so too the conspiracy count fails).
We also affirm the summary judgment entered in favor of Ameri-Manage on the section 1983 action in the plaintiff's second count. Absent an unequivocal expression of intent by either the United States Congress to overturn a state's eleventh amendment immunity, or a state legislature to waive the state's sovereign immunity, a state and its agencies are immune from civil rights actions brought against them pursuant to section 1983 in both federal and state courts. See Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); art. X, § 13, Fla. Const. See also Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Ex Parte: In re the State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). The plaintiff does not argue that the Florida legislature has waived the state's sovereign immunity so as to allow civil rights actions against it.[1]See art. X, § 13, Fla. Const. Instead, the plaintiff argues that Ameri-Manage is not a state agency for purposes of sovereign immunity in civil rights actions. We reject the plaintiff's argument.
An examination of the legal relationship between Ameri-Manage and the state is dispositive. Pursuant to a contract between the state and Ameri-Manage, Ameri-Manage was to provide direct management for South Florida State Hospital, a state-owned hospital, coordinate the development of a long-range plan for the hospital consistent with legislative mandate, and assist the Department (HRS) in planning for interim and long-range forensic services. HRS delegated to the administrator of the hospital (Burton, an employee of Ameri-Manage), among other things, the authority to (1) "appoint grievance committee members and render a final decision on employee grievances"; (2) "effect personnel actions as specified in HRSR 60-10, 10(a) ... [and] hold presuspension/termination conferences and establish procedures for same"; (3) "submit personnel actions to the State Personnel Director directly, as specified in HRSR 60-94(a)(1)0(26)"; (4) "assign to established *812 classes new positions authorized by the legislature"; (5) "assign to established classes new positions authorized by the Administrative Commission"; (6) "assign to an established class any position that is added in lieu of a position that is deleted"; (7) "reclassify positions to existing Career Service Classes"; (8) "respond to Collective Bargaining Step One Grievances"; (9) "effect all types of disciplinary actions as stated in HRSR 60-10 paragraph 5. This includes oral reprimand, written reprimand, change in assignment, reduction in pay, demotion, suspension and dismissal." [emphasis added] It was the exercise of this last-stated delegated authority which gave rise to the plaintiff's claim under section 1983.
An examination of the relationship between Ameri-Manage and the State of Florida leads us to the conclusion that Ameri-Manage was operating as an agency of the state at the time of the plaintiff's discharge from his position at the hospital. See Tuveson v. Florida Governor's Council on Indian Affairs, Inc., 734 F.2d 730 (11th Cir.1984). See also Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ford Motor Co. Cf. § 768.28(2), Fla. Stat. (1985) (defining "state agencies" for purposes of the statute waiving sovereign immunity in tort actions as including "corporations primarily acting as instrumentalities or agencies of the state"). Since the Florida legislature has not waived the state's sovereign immunity in civil rights actions, see Gamble v. Florida Dep't of Health & Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986); Shinholster v. Graham, 527 F. Supp. 1318 (N.D.Fla. 1981);[2] art. X, § 13, Fla. Const., the summary judgment in favor of Ameri-Manage on the plaintiff's second count alleging a civil rights violation was properly entered.
The parties are in agreement that Burton can be held liable in his individual capacity for any civil rights violations that might have occurred. Accordingly, the summary judgment entered in favor of all of the defendants on plaintiff's defamation count is affirmed, the summary judgment entered in favor of Ameri-Manage on the count alleging a civil rights violation is affirmed, and the cause is remanded to the trial court for further proceedings.
NOTES
[1] In this regard, see the discussion in Shinholster v. Graham, 527 F. Supp. 1318 (N.D.Fla. 1981). The court in Shinholster reviews the relevant legislation and concludes that the Florida legislature has not waived its eleventh amendment immunity to civil rights suits. The court's analysis is equally applicable to the issue of whether the legislature has waived the state's sovereign immunity in civil rights actions brought in state court. We find that analysis persuasive and hereby adopt it. See also Tuveson v. Florida Governor's Council on Indian Affairs, Inc., 734 F.2d 730 (11th Cir.1984); Cate v. Oldham, 707 F.2d 1176 (11th Cir.1983); Ostroff v. Florida Dep't of Health & Rehabilitative Services, 554 F. Supp. 347 (M.D.Fla. 1983). Contra Meeker v. Addison, 586 F. Supp. 216 (S.D.Fla. 1984).

We note that the Eleventh Circuit Court of Appeals has recently approved the decision in Shinholster and rejected the reasoning in Meeker. See Gamble v. Florida Dep't of Health & Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986).
[2] See supra note 1.